## SHAW *v.* SWEENEY.

Where the bill of exceptions shows that the court below erred in granting a new trial upon a legal proposition, the judgment will be reversed.

It is no defense to an action of slander, that the slanderous words were spoken by the fireside of the defendant, in the presence of but two or three neighbors. This circumstance will not remove the presumption of malice.

Exceptions to the general rule of presumptive malice, explained.

*Error to Jackson District Court.*

*Opinion by* KINNEY, J. Shaw sued Sweeney in case for speaking of and concerning him the following slanderous words. "Boys have you heard about old Shaw's stealing sheep, he has stolen one of Mary's sheep." The defendant pleaded "not guilty." Under the instructions of the court, the jury found the defendant guilty and asses-

sed the damages of the plaintiff at one hundred and sixty eight dollars. The defendant moved for and obtained a new trial. The decision of the court ordering a new trial is assigned for error. The following is the bill of exceptions taken by the plaintiff in error to this decision of the court.

"Be it remembered that the defendant moved the court for a new trial, and that the court ordered a new trial on the ground that the verdict was contrary to law in this, that the conversation took place at the house and fireside of the defendant, in a conversation before and in the presence of but two or three of his neighbors." The court also decide as appears from the bill of exceptions "that the words as proved would have been actionable if spoken except at the defendant's fireside, but being spoken there the action could not be maintained."

In ordinary cases when the court in the exercise of a sound discretion grants or refuses a new trial, as has been repeatedly decided by this court we are not disposed to interfere with that discretion. But when the decision is set out in a bill of exceptions based upon a legal proposition, if the court err in allowing or refusing a new trial the decision will be reversed. In the case before us the court granted a new trial upon the ground that the action could not be maintained as the defendant spoke the words around his own fireside in the presence of but two or three of his neighbors.

Was this a protection to the defendant? a good and valid defense? and did the time place and circumstances render the communication privileged, and harmless? If not, the words being actionable *per se* the plaintiff upon proof of the speaking of the words was entitled to a verdict, as the law, when words are in themselves actionable presumes a malicious intent, and therefore express malice need not be proved. 2 Greenl. on Ev. § 418. Starkie on Sland. p. 47.

The court granted a new trial because the defendant was privileged to speak the words in his own domicile and al-

Shaw *v.* Sweeney.

though the words were actionable, yet the place and circumstances of speaking them would rebut the legal presumption of malice. In the case of *White* v. *Nicholls* et al. 3d Howard 285, the court lay down the following exceptions to the general rule of presumptive malice. 1 Whenever the author and publisher of the alleged slander acted in the *bona fide* discharge of a public or private duty legal or moral, or in the prosecution of his own rights or interests. For example, words spoken in confidence and friendship as a caution, or a letter written confidentially to persons who employed A. as a solicitor conveying charges injurious to his professional character in the management of certain causes which they had entrusted to him, and in which the writer of the letter was also interested.

2. Anything written by a master in giving the character of a servant who has been in his employ.

3. Words used in the course of a legal or judicial proceeding, however hard they may bear upon the party of whom they are used.

4. Publications duly made in the ordinary mode of parliamentary proceedings, as a petition printed and delivered to the members of a committee appointed by the House of Commons, to hear and examine grievances. "But the term "exceptions" as applied to cases like those just enumerated, could never be interpreted to mean, that there is a class of actors or transactions placed above the cognizance of the law, absolved from the commands of justice. The privilege spoken of in the books, should in our opinion, be taken with strong and well defined qualifications. That the excepted instances shall so far change the ordinary rule with respect to slanderous or libelous matter, as to remove the regular and usual presumption of malice, and to make it incumbent on the party complaining, to show malice either by the construction of the spoken or written matter, or by facts and circumstances connected with that matter or with the situation of the parties, adequate to authorize the conclusion." In the case of *Cock-*

*agne* v. *Hodgkisson*, 5 Car. & Pa. 543, Baron Parke says "that every wilful and unauthorized publication injurious to the character of another, is a libel, but where the writer is acting in any duty legal or moral towards the person to whom he writes, or is bound by his situation to protect the interest of such person, that which he writes under such circumstances, is a privileged communication unless the writer is actuated by malice."

Apply these general principles and definitions to the case at bar, and we cannot come to the conclusion, that the words spoken, fall within the exceptions or were in any sense privileged in consequence of the defendant speaking them in his own domicile. The circumstances under which the slanderous words were used, will not rebut the presumption of malice, so as to throw the *onus* upon the plaintiff; if *not*, the plaintiff could maintain his action and was entitled to a verdict upon proof of speaking the words, unless the defendant could by testimony remove the legal presumption of malice.

A man's fireside ought not to be made the place for the promulgation of slander, but if a person does resort to the domestic circle, and in the presence of citizens, defames and traduces the character of his neighbor, he should be held responsible to the injured party. He will not be permitted to plead in bar of the action, that his house was his castle, for the purposes of falsehood and slander. If the doctrine contended for at bar by the defendant in error, were to obtain, a person could slander and destroy the fairest reputation with perfect impunity. Reports of the vilest nature against reputation before unsullied, emanating from a malicious heart with corrupt motives, could be put in circulation in a man's own house in the presence of others, and the person whose character was thus traduced and destroyed, could have no remedy, because the words were spoken, as in this case, around the defendant's fireside. We should regret to see a doctrine, which would open so wide a door for the gratification of the malicious propensities of the human heart, and so sub-

versive of the social good of the community seriously tolerated by the courts. The judgment therefore in this case allowing to the defendant a new trial, is reversed and set aside, and the court below required to enter judgment for the plaintiff below upon the verdict.

Judgment reversed.

*Wilson & Smith*, for plaintiff in error.

*Lovell & Samuels* and *P. B. Bradley*, for defendant.